IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                    :
                                          :     Chapter 7
STUDENT FINANCE CORPORATION,              :
                                          :     Case No. 02-11620 (KJC)
        Debtor.                           :
                                          :
_____   :

# M E M O R A N D U M [1]

**BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

On June 5, 2002, several creditors of Student Finance Corporation ("SFC" or the "Debtor") filed an involuntary chapter 7 bankruptcy petition. On November 4, 2002, the Debtor consented to the entry of an order for relief under chapter 7 (the "Order for Chapter 7 Relief") and converted its case to a case under chapter 11 of the Bankruptcy Code. On September 29, 2003, Charles A. Stanziale, Jr., Esquire was appointed the chapter 11 trustee. The case was eventually re-converted to a chapter 7 liquidation on November 14, 2003. Mr. Stanziale was appointed the chapter 7 trustee (the "Trustee").

Now before the Court is the Trustee's Motion for Summary Judgment (the "Summary Judgment Motion")(docket no. 1550) with respect to the Motion of CIT Communications Finance Corporation ("CIT") for an Order to (1) Compel Debtor to Assume or Reject Lease and (2) Compel Immediate Payment of Administrative Rent and Lease Obligations or, in the

---

[1] This Memorandum constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052, made applicable to contested matters by Bankruptcy Rule 9014. The Court has jurisdiction pursuant to 28 U.S.C. §1334 and §157(a). This is a core matter pursuant to 28 U.S.C. §157(b)(2)(B),(G),(M) and (O).

Alternative, (3) Provide Adequate Protection and (4) Grant Relief from Automatic Stay (the "Lease Motion").[2] For the reasons which follow, the Summary Judgment Motion will be denied.

## BACKGROUND

The following facts are uncontested. On June 14, 2001, SFC and CIT Communications Finance Corporation ("CIT") entered into a Standard Lease Agreement for Business Customers (the "Lease"), whereby CIT purchased a certain Definity G3R telephone system (the "Telephone System") for use in its business. According to the terms of the Lease, SFC was to pay CIT $22,243.00 per month over an initial 36-month term, totaling approximately $800,748. SFC had the right to renew the Lease or otherwise purchase the Telephone System at the end of the initial term if SFC was not in default of its obligations under the Lease. The Lease, by its terms, automatically renewed if CIT was not notified of termination within 30 days prior to the end of the initial term.

Pursuant to the terms of the Lease, SFC also executed an irrevocable letter of credit (the "Letter of Credit") in the amount of $387,644 (50% of the total purchase price of the Telephone System) for the benefit of CIT. Student Loan Services ("SLS"), an affiliated entity of SFC, was a co-lessor under the Lease, but not a debtor in any bankruptcy case.

SFC paid monthly payments from June 14, 2001 through July 2002, totaling approximately $316,953.91. At the time of the filing of the involuntary petition on June 5, 2002, the Debtor was current on its Lease payments, although it subsequently failed to remit payments

---

[2]The Lease Motion (docket no. 518) was filed on October 3, 2003. Due to subsequent developments, described below, all claims for relief in the Lease Motion are now moot, except for CIT's request for payment of an administrative expense claim.

for August and September, 2002.[3]

On September 13, 2002, without seeking relief from the automatic stay, CIT issued a notice of default to the Debtor and demanded immediate payment of the $49,103.66 arrearage by certified funds within 10 days of the date of the letter.[4] On September 20, 2002, CIT drew upon the entire Letter of Credit and applied the proceeds toward the $70,661.58 that was currently due and owing by October 1, 2002, plus the base amount that was due under on the Lease. CIT subsequently sent the Debtor an invoice which reflected a zero balance due. However, CIT then changed the application of the Letter of Credit funds and, thereafter, continued to invoice SFC for the monthly usage of the Telephone System until April 2003. By letter of July 18, 2003 to SLS, CIT accelerated the balance of sums due under the Lease, demanding payment of $444,149.04, plus interest, fees and costs.

On October 29, 2002, the Debtor conducted a public auction of some of its assets, which included the Telephone System. SLS purportedly purchased the system at the auction for $42,500.00. According to the Trustee, CIT had notice that SLS possessed the equipment at least as early as March 20, 2003, but did not repossess the equipment from SLS until April 22, 2005 by a writ of replevin. CIT then sold the equipment for $22,000.25. CIT filed a Proof of Claim in

---

[3]After the June 5, 2002 filing of involuntary petition, one monthly payment of $22,243.00 was made on August 5, 2002 (*See* Ex. D to the Trustee's Appendix to the Summary Judgment Motion (docket no. 1552)). Presumably, that payment was applied to the monthly payment due for July 2002.

[4]Paragraph 8 of the Lease defines the circumstances of default:
> DEFAULT. Each of the following is an "Event of Default" under this Lease and all Schedules: (a) you fail to pay any Rental Payment or any other payment within 10 days of the due date; (b) you do not perform any of your other obligations under this Lease or any other agreement with us or with any of our affiliates and this failure continues for 10 days after we have notified you of it.

this case in the amount of $785,404.61.

CIT filed its Lease Motion on October 3, 2003. CIT now requests, pursuant to §§503(b)(1)(A) and 365(d)(5),[5] that the Court grant (1) an allowed Chapter 11 administrative expense claim at the contract rate of rent from the petition date until the date of conversion of Debtor's bankruptcy case to a Chapter 7 case, and (2) an allowed Chapter 7 administrative expense claim at the contract rate of rent from the date of conversion of Debtor's case to a case under Chapter 7 through the effective date of rejection. The Trustee filed his Objection on November 4, 2003, alleging that CIT is not entitled to any relief under the Lease Motion. The Trustee argues that the Lease is not a true lease, barring any recovery under §365, and asserts that SFC is not in possession of the Telephone System, thereby limiting any recovery under §503.[6]

The Trustee filed his Motion for Summary Judgment on February 26, 2007. Oral argument was held on July 18, 2007, and further argument was held on August 8, 2007. Supplemental briefing is now complete.

## LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, answers to

---

[5]CIT's Motion to Compel correctly references § 365(d)(10). Section 365(d)(10) was renumbered as § 365(d)(5) under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, S. 256, Pub.L.No. 109-8, 119 Stat. 23 (2005), which became effective on October 17, 2005.

[6]On December 4, 2002, Debtor filed its Schedules and Statement of Financial Affairs. Schedule G, which lists Debtor's executory contracts and unexpired leases, includes the Lease. The Lease is listed as "Avaya Leasing." The Lease also was included in several motions to extend the time to assume or reject the Lease filed by the Trustee. The parties stipulated that the Lease was deemed rejected on March 31, 2005. The Trustee believes the proper interpretation of the stipulation is that if the Lease is found to be a true lease, then the Lease will be deemed rejected on March 31, 2005. I make no finding with respect to this issue.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding the motion, all factual inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–588 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) (emphasis in original).

After sufficient proof has been presented to support the motion, the burden shifts to the non-moving party to show that genuine issues of material fact still exist and that summary judgment is not appropriate. *Matsushita*, 475 U.S. at 587. A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

## DISCUSSION

The Trustee moves for the entry of summary judgment in his favor on a narrow issue. The issue, as framed by the Trustee, is "whether the [Lease] Agreement was breached, terminated, or otherwise rendered ineffective by the time the order of relief was entered." (Chapter 7 Trustee's Memorandum of Law in Support of Motion for Summary Judgment, p. 4).

5

By such a determination, the Trustee endeavors to bar CIT from recovering any lease rejection damages pursuant to §365(d)(5). The Trustee advances two primary arguments in support of his Summary Judgment Motion.

First, the Trustee argues that CIT materially breached the Lease prior to the entry of the Order for Chapter 7 Relief by failing to provide SFC with the opportunity to cure the event of default. He reasons that CIT's breach excused SFC from further performance under the contract (other than paying any delinquency due prior to that breach), thereby effecting a termination of the Lease. Because the Lease was terminated, the Trustee argues that the Lease was not executory on the date of the Order for Chapter 7 Relief and, therefore, CIT is not entitled to an administrative expense claim.

In response, CIT disagrees that it materially breached the Lease. CIT argues that the Lease treats payment defaults and non-monetary defaults differently and, therefore, SFC did not have a contractual right to cure the missed monthly payments.[7] CIT further contends that even if CIT had a contractual or common law obligation to give SFC ten days to cure, SFC never attempted, and was unable to tender, a cure payment.

Second, the Trustee argues that CIT terminated the Lease by accelerating the amount due for the initial term, drawing down the entire letter of credit, and exercising its remedies under paragraph 9(b) of the Lease prior to the entry of the Order for Chapter 7 Relief.[8] The Trustee

---

[7]CIT points to the differences in the language used between paragraphs 8(a) and 8(b) of the Lease. (*See* n. 4, *supra*.). CIT argues that paragraph 8(a) provides that a default occurs when when a monthly payment is more than 10 days past due, and does not provide for a cure period. Paragraph 8(b), however, applies to other, non-monetary defaults and includes a 10-day cure provision.

[8]The remedies afforded to CIT in an Event of Default are outlined in paragraph 9 of the Lease:
REMEDIES. If an Event of Default occurs, we may do one or more of

6

disputes that Lease remained in force and effect until March 31, 2005, as CIT asserts. Rather, the Trustee claims that once CIT exercised its right to acceleration, SFC was no longer entitled to restore its right to pay the balance due in installments over the initial term of the Lease. Therefore, the Trustee argues that the Lease was terminated prior to the Order for Chapter 7 Relief and CIT is not entitled to an administrative expense claim.

CIT disputes that it terminated the Lease or that it accelerated the balance due. CIT contends that when SFC defaulted on its obligation, CIT sent SFC a notice of default which did not mention any actual or contemplated termination of the Lease. CIT asserts that it merely exercised one of its rights under the Lease and declared due the accelerated amount specified in paragraph 9(b). It then exercised its separate and independent rights under the Letter of Credit to the collect the proceeds. CIT argues that neither of these acts constitutes a termination of the Lease. In fact, CIT continued to invoice SFC for the amounts due under the Lease and the automatic renewal provisions under the Lease were allegedly triggered.

On August 7, 2007, the Court held a further hearing to discuss what effect, if any, the

---

the following: (a) we may cancel or terminate this Lease or any or all other agreements that we have entered into with you or withdraw any offer of credit; (b) we may require you to immediately pay us, as compensation for our loss of our bargain and not as a penalty, a sum equal to (I) the present value of all unpaid Lease Payments for the remainder of the term plus the present value of our anticipated residual interest in the Equipment, each discounted at 5% per year, compounded monthly, plus (ii) all other amounts due that become due under this Lease; (c) we may require you to deliver the Equipment to us as set forth in Section 3; (d) we or our agent may peacefully repossess the Equipment without court order and you will not make any claims against us for damages or trespass or any other reason; and (e) we may exercise any other right or remedy available at law or in equity. ... These remedies are cumulative of every other right or remedy under this Lease or now or hereafter existing at law or in equity or by statute or otherwise, and may be enforced concurrently or from time to time.

automatic stay should have on disposition of the Summary Judgment Motion, an issue neither of the parties addressed earlier. After the hearing, the Court received supplemental written submissions on the issue. Both the Trustee and CIT have argued that the operative date to determine whether the Lease was terminated is the date of the Order for Chapter 7 Relief, i.e., November 4, 2002. I conclude, however, that the events occurring immediately upon and just after the filing of the involuntary bankruptcy petition are relevant to the disposition of the Summary Judgment Motion.

The Debtor's involuntary bankruptcy petition was filed on June 5, 2002. The commencement of the involuntary chapter 11 petition gives rise to imposition of the automatic stay. 11 U.S.C. § 362(a). In his supplemental brief, the Trustee argues that:

> At the time of the filing of the involuntary petition, the agreement (characterized as a lease) was in force and effect and was property of the estate. Post-petition, CIT declared a default, undertook collection efforts, accelerated the amount due and applied the entire letter of credit against the amount due and not yet due.

It is well-settled law in this Circuit that any act post-petition by a creditor that violates the automatic stay under §362 is void. *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206-07, (3d Cir. 1991); *In re Hechinger Investment Company of Delaware, Inc.*, 2001 Bankr. LEXIS 148, *16 (Bankr. D. Del. 2001). CIT's post-petition declaration of default and the exercise of certain of its collection remedies were, therefore, void. *Id.*. Therefore, the Lease was not terminated prior to the date most relevant for present purposes: the filing of the involuntary petition.

The Trustee's Motion for Summary Judgment will be denied.[9] An appropriate order follows.

Dated: November 28, 2007

BY THE COURT:

*[signature]*

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

---

[9] I do not decide 1) whether, in light of the Court's decision today and by its *post-petition* conduct, CIT breached the Lease in such a way that it should be considered terminated under applicable law, and, if so, when such termination occurred; 2) whether the Lease is a true lease or created a security interest; 3) the consequence of any act(s) taken by CIT in violation of the automatic stay; or 4) CIT's entitlement to any administrative expense claim.